

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/02/2009

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-34992-H1-7 |
| | § | |
| NIGHTHAWK OILFIELD SERVICES, | § | JOINTLY ADMINISTERED |
| LTD., *et al.* | § | |
| Debtors | § | (Chapter 7) |

### AGREED ORDER ON BANK OF AMERICA, N.A.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF AN ACT AGAINST PROPERTY [DOC. NO. 21] AND BANK OF AMERICA, N.A.'S EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF AN ACT AGAINST PROPERTY [DOC. NO. 22]

CAME ON for final hearing *Bank of America, N.A.'s Motion for Relief from the Automatic Stay of an Act Against Property* [Docket No. 21] (the "Stay Motion) and *Bank of America, N.A.'s Emergency Motion for Relief from the Automatic Stay of an Act Against Property* [Docket No. 22] (the "Emergency Motion," and collectively with the Stay Motion hereinafter, the "Motions"). The Court finds that notice of this final hearing was proper and that the agreement of the parties reflected in this Agreed Order should be approved thereby resolving the Motions. Furthermore, this Court finds as follows:

WHEREAS, pursuant to the Agreed Interim Order entered by this Court on August 7, 2009 (the "Agreed Interim Order"), and as adequate protection, Bank of America, N.A. ("BOA") has received payment from the Estate in the amount of $2,528,186.38 and has applied such payments to the outstanding balance under the Revolving Loan Agreement (as defined in the Motions) (the "Revolving Loan Agreement");

WHEREAS pursuant to the Agreed Interim Order and to the Case Management Order and Order Clarifying the Trustee's Authority entered by this Court on July 16, 2009 ("Case Management Order"), tangible assets continue to be preserved and receivables continue to be collected in accordance with such orders;

WHEREAS pursuant to the Agreed Interim Order, this Court held an interim hearing on August 26, 2009 (the "Sale Hearing"), to consider proposals made by the Trustee with respect to an orderly method of liquidation of BOA's alleged collateral as further adequate protection;

WHEREAS, the Trustee and Bank of America have agreed that the Trustee will seek to recover all administrative expenses, including professional fees and the Trustee's compensation, first from assets that are not encumbered by the liens securing the Revolving Loan Agreement or the Term A Note under the Term Loan Agreement (as defined in the Motion) (the "Term A Note"). In the event that there are not sufficient unencumbered funds to pay such administrative expenses then the Trustee and Bank of America agree that the Trustee's ability to surcharge the collateral securing the Revolving Loan Agreement and Term A Note pursuant to section 506 of the Bankruptcy Code shall be limited to the collateral securing the Term A Note and shall be

capped at $250,000 for allowed attorneys fees relating to the preservation and disposition of the collateral securing the Term A Note and at the "Trustee's Compensation Cap" for allowed compensation of the Trustee under section 326 of the Bankruptcy Code. The "Trustee's Compensation Cap" shall equal the sum of i) $100,000, and ii) 2% of the "Net Proceeds" received by Bank of America from the disposition of the equipment that forms the collateral under the Term A Note. The term "Net Proceeds" shall mean the amount of proceeds received by Bank of America from the disposition of equipment less $35 million and all costs of disposition and preservation of the equipment including auctioneer fees and expenses, transportation, security and personnel costs. By way of example, if the Trustee delivers $40 million to Bank of America after deducting the auctioneer's commission and other costs of sale, and Bank of America has incurred $3 million in transportation, security and personnel costs and there are no prior liens, then the Trustee's Compensation Cap would be $100,000 plus 2% of $2 million.

**IT IS THEREFORE,**

**ORDERED** that BOA is authorized to continue the application of funds received into its blocked accounts to the outstanding balance under the Revolving Loan Agreement, until such time as the Revolving Loan Agreement is fully satisfied and then to the Term A Note and subject to further order of this Court, and that the exercise of discretion with respect to collections of accounts receivable remains exclusively with the Trustee and his authorized representatives; it is further

**ORDERED** that the Trustee is authorized and directed to turnover by means of wire transfer the balance of the funds on hand from the collection of accounts receivable and those proceeds of accounts receivable to be received in the future, including those funds held in Regions Bank as of the petition date, less a reserve of $50,000.00 for ongoing administrative costs but excluding professional fees, to BOA to be applied to the outstanding balance under the Revolving Loan Agreement, until such time as the revolving Loan Agreement is fully satisfied and then to the Term A Note, and subject to further order of the Court; it is further

**ORDERED** that the Case Management Order remains in effect except to the extent that it is specifically modified herein; it is further

**ORDERED** that the Trustee is authorized to sell by public auction all equipment, vehicles, and other miscellaneous tangible items that are set forth on **Exhibit 1** or subsequently identified by the Trustee (the "Personal Property"). Except as set forth to the contrary in this paragraph, all sales shall be free and clear of all liens claims, interests and encumbrances. Any such liens, claims, interests and encumbrances shall attach to the proceeds of the sale in the order of their existing priority and with the same validity, force and effect which they now have, subject to any claims and defenses the Trustee may possess with respect thereto. Not later than September 9, 2009, the Trustee must give notice of the proposed auction to all persons who have recorded liens against or security interests in the property to be sold. If any such party objects to the auction sales set forth in this paragraph, that party must file an objection and request an emergency hearing on such objection (in the manner set forth in Bankruptcy Local Rule 9013), with such request for emergency hearing to be filed no later than September 21, 2009. No holder

of a lien or of a security interest that had adequate notice of the hearing conducted on September 2, 2009 may file such an emergency objection. Any party asserting a lien, claim, interest or encumbrance in any of the property to be sold at an auction sale shall notify the Trustee in writing not later than September 30, 2009 or such lien, claim, interest or encumbrance shall be forever waived; it is further

**ORDERED** that any party with a possessory lien against any asset to be sold at the auctions described in the preceding paragraph must turnover such estate property to the Trustee pursuant to 11 U.S.C. § 542, with such possessory lien attaching to the proceeds of the assets so turned over; provided that any such entity may seek emergency relief from this provision of the Order; and further provided that any motion for emergency relief from this paragraph of the order shall not excuse compliance with § 542 of the Bankruptcy Code.

**ORDERED** that Ritchie Bros. Auctioneers (America) Inc. ("Ritchie") is authorized to conduct the public sales on behalf of the Estate. Ritchie shall be compensated in accordance with the agreement attached as **Exhibit 2**. All sales proceeds net of Ritchie's compensation shall be delivered to the Trustee by Ritchie within 10 days of the conclusion of the sale along with an accounting.

**ORDERED** that the Trustee is authorized to sell by private sale all equipment, vehicles, property and other miscellaneous tangible items that are set forth on **Exhibits 3-6** on the terms set forth therein (the "Private Sale Property"). Except as set forth to the contrary in this paragraph, all sales shall be free and clear of all liens claims, interests and encumbrances. Any such liens, claims, interests and encumbrances shall attach to the proceeds of the sale in the order of their existing priority and with the same validity, force and effect which they now have, subject to any claims and defenses the Trustee may possess with respect thereto. Not later than September 9, 2009, the Trustee must give notice of the private sale to all persons who have recorded liens against or security interests in the property to be sold. The Trustee or Bank of America must retain, in cash, an amount equal to or greater than the amount claimed in all such recorded liens or security interests, save and except for the liens and security interests held by Bank of America and D.B. Zwirn Special Opportunities Fund, L.L.C., through Fortress VRF Advisors I, LLC. Any party asserting a lien, claim, interest or encumbrance for which cash has been reserved and that objects to the free and clear sale set forth herein must file such objection not later than September 30, 2009, and serve the objection in accordance with the Federal Rules of Bankruptcy Procedure. Notwithstanding the actual or potential filing of an objection, the sales approved in this paragraph may be immediately completed on a free and clear basis with such liens, claims, interests and encumbrances attaching to the cash proceeds that are retained pursuant to this paragraph. As to cash amounts retained to which no timely objection is filed, the cash amounts shall be paid to Bank of America as provided in this order and subject to return by Bank of America as provided in this order. As to cash amounts to which a timely objection is filed, the cash amounts shall be retained by the Trustee or Bank of America and shall only be disbursed following further order of the Court.

**ORDERED** that all sales shall be on an "as is, where is" basis without any warranties or representations of any kind or nature whatsoever, whether express or implied, including any warranty or representation concerning the condition, merchantability, or fitness for any purpose.

3

**ORDERED** that upon the consummation of any sale, all persons holding any lien, claim, interest or encumbrance against or in the debtor or the property to be sold of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such lien, claim, interest or encumbrance against the purchaser or the property.

**ORDERED** that, subject to disgorgement and except as expressly set forth herein, the Trustee shall deliver all sale proceeds to BOA up to the amount of their secured debt. The Automatic Stay is hereby modified to allow BOA to apply funds received from the sale of its alleged collateral to the outstanding balance under the Term A Note, until such time as the Term A Note is fully satisfied, and in accordance with any and all Orders entered by this Court following the Sale Hearing and any and all Orders henceforth entered by this Court addressing the liquidation of such alleged collateral; it is further

**ORDERED** that, until further order by this Court, all sales contemplated herein shall be conducted by motion of the Trustee and shall require his authorization and approval of this Court, including those motions currently pending or ruled upon; it is further

**ORDERED** the Trustee and Bank of America have agreed that the Trustee will seek to recover all administrative expenses, including professional fees and the Trustee's compensation, first from assets that are not encumbered by the liens securing the Revolving Loan Agreement or the Term A Note. In the event that there are not sufficient unencumbered funds to pay such administrative expenses then the Trustee and Bank of America agree that the Trustee's ability to surcharge the collateral securing the Revolving Loan Agreement and Term A Note pursuant to section 506 of the Bankruptcy Code shall be limited to the collateral securing the Term A Note and shall be capped at $250,000 for allowed attorneys fees relating to the preservation and disposition of the collateral securing the Term A Note and at the "Trustee's Compensation Cap" for allowed compensation of the Trustee under section 326 of the Bankruptcy Code. The "Trustee's Compensation Cap" shall equal the sum of i) $100,000, and ii) 2% of the "Net Proceeds" received by Bank of America from the disposition of the equipment that forms the collateral under the Term A Note. The term "Net Proceeds" shall mean the amount of proceeds received by Bank of America from the disposition of equipment less $35 million and all costs of disposition and preservation of the equipment including auctioneer fees and expenses, transportation, security and personnel costs. By way of example, if the Trustee delivers $40 million to Bank of America after deducting the auctioneer's commission and other costs of sale, and Bank of America has incurred $3 million in transportation, security and personnel costs and there are no prior liens, then the Trustee's Compensation Cap would be $100,000 plus 2% of $2 million; it is further

**ORDERED** that notwithstanding the foregoing paragraph, BOA retains all of its rights to object to the allowance of attorney's fees and trustee fees, and to the surcharge of those fees against its collateral; it is further

**ORDERED** that BOA and the Trustee agree that the Trustee, by agreeing to the entry of this Order, reserves his right to pursue any and all allowed remedies to resolve any defect in BOA's alleged liens or any avoidance actions against BOA, and that BOA agrees that its receipt

4

of all funds contemplated herein is subject to potential future disgorgement by order of this Court.

**ORDERED** that nothing contained herein shall authorize the sale of the surface equipment associated with the SWD #1, #2, and #3 and Shaw disposal wells (such equipment being more particularly described on the attached Exhibits "7" and "8"), or operate as a modification of the automatic stay in connection with such equipment. The disposition of such equipment shall be determined by separate motion. This order neither precludes nor authorizes the owners or operators of SWD#1, SWD#2, SWD #3 or Shaw from seeking an expense reimbursement from the Estate or any other party-in-interest, in the manner allowed by the Bankruptcy Code, Bankruptcy Rules or applicable non-bankruptcy law.

**ORDERED** that amounts paid to Bank of America must be refunded by Bank of America to the extent that liens or security interests with a higher amount of priority exist and attached to the sales proceeds in accordance with the terms of this Order.

**ORDERED** that the Court has determined that the stay imposed by Federal Rule of Bankruptcy Procedure 6004(h) shall not apply to the sale transactions contemplated by this Order, for good cause shown, and this Order shall be effective and enforceable immediately upon entry.

DATED: ___9/2___, 2009.

THE HONORABLE MARVIN P. ISGUR
UNITED STATES BANKRUPTCY JUDGE