**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**ENTERED**
**06/02/2010**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **NIGHTHAWK OILFIELD** | § | **CASE NO. 09-34992-H1-7** |
| **SERVICES, LTD. et al.,** | § | **(Chapter 7)** |
| | § | **(Jointly Administered)** |
| Debtor. | § | |

<u>**ORDER**</u>

The Court has considered the Trustee's Application to Employ Auctioneer.  The Court finds that the proposed engagement is made in good faith and is in the best interest of the Estate and its creditors.  Accordingly, it is therefore

**ORDERED THAT:**

1.      The Trustee's Application to Employ Auctioneer is **GRANTED**.

2.      The Trustee is authorized to employ Ritchie Bros. Auctioneers (America) Inc. to sell assets of the estate pursuant to the terms of the attached agreement.

3.      The Trustee is authorized to execute all documents necessary to effectuate the sale of assets of the estate pursuant to this order.

Signed:  June 02, 2010

_____
Marvin Isgur
Chief United States Bankruptcy Judge

**rb RITCHIE BROS.**
Auctioneers

## CONTRACT TO AUCTION

**DATED** this _____ day of April, 2010.

**BETWEEN**:

> **RITCHIE BROS. AUCTIONEERS (AMERICA) INC.**, having its head office at 4000 Pine Lake Road, in the City of Lincoln, in the State of Nebraska, 68516
> Web Site: www.rbauction.com

> Telephone No.          (402) 421-3631
> Fax No.                (402) 421-1738

> (the **"Auctioneer"**)

**AND:**

> **ROBBYE R. WALDRON, CHAPTER 7 TRUSTEE** for the Estate of Nighthawk Oilfield Services, Ltd. et al., Case No. 09-34992-H1-7, and related cases jointly administered under Case No. 09-34992-H1-7 (the "Bankruptcy Cases"), and having his office at 15150 Middlebrook Dr., Houston, Texas 77058.

> (the **"Trustee"**)

**AND:**

> **BANK OF AMERICA, N.A.**, as successor by merger to LaSalle Business Credit, LLC, in its capacity as agent for the revolving loan lenders and Term A loan lenders under certain credit facilities of having Nighthawk Transport I, L.P., as borrower ("Nighthawk"), which credit facilities are guaranteed by Nighthawk Oilfield Services, Ltd., as general partner of Nighthawk, and certain other subsidiaries and affiliates of Nighthawk, and having a place of business at 135 S. LaSalle Street, 4th Floor, Chicago, Illinois 60603.

> Telephone No.          (312) 992-9597
> Fax No.                (312) 992-4608
> E-Mail Address         donald.a.mastro@baml.com

> (the **"Secured Party"**)

## TERMS AND CONDITIONS OF THIS CONTRACT

### Agreement

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the above parties enter into this Contract (the "Contract") which sets out their respective rights,

US Guar R03_09

Initials _/lw_  _HRW_

1880142v2

obligations and undertakings regarding the sale, subject to the terms and conditions hereof, by unreserved public auctions of all those items described on Schedule "A" attached hereto (from time to time collectively, the "Equipment").

## SECTION 1: AUCTIONEER'S OBLIGATIONS AND RESPONSIBILITIES

1.01 **Sale Date** – The Auctioneer shall offer the Equipment, together with any additional items delivered by the Secured Party or by the Trustee to the Auctioneer's auction sites, for sale at unreserved public auctions on various dates until the Bankruptcy Cases are closed.

1.02 **Payment** – Within 10 days after each auction, the Auctioneer shall wire transfer, in immediately available funds, the net proceeds collected from the sale of the Equipment after making all deductions permitted under this Contract.

1.03 **Commission** – The Auctioneer shall be entitled to the following commission payable at the time of each auction, adjusted according to the total aggregate gross auction values of all equipment consigned by the Secured Party during each calendar year as follows:

    (a)     for all lots realizing a selling price in excess of $2,500:

        (i)     11% for gross proceeds of $0-2.5 million;

        (ii)     10.5% for gross proceeds of $2.5 - $5 million; and

        (iii)     10% for gross proceeds in excess of $5 million; and

    (b) for any lot realizing $2,500 or less, 15%, with a minimum fee of $100 per lot.

1.04 **Other** – The Auctioneer shall:

    (a)     supervise the preparation and organization of each auction;

    (b)     provide auctioneers and accountants required for auctions of this type;

    (c)     ensure on-site food catering services are available to those in attendance at each auction;

    (d)     provide listing catalogs of the lots offered for sale to potential buyers at each auction; and.

    (e)     collect and remit State and local sales tax arising upon the sale of the Equipment at each auction.

The Trustee and Secured Party, or their representatives shall have the right, but shall not be obligated, to attend each auction.

The Auctioneer shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract. The Secured Party and Trustee shall be permitted to inspect and audit, at any time during the performance of this Contract and for a period of three years thereafter, all of the Auctioneer's materials, books, records, correspondence, receipts, facilities, memoranda and other documents which are in any way related to the transactions contemplated by this Contract. The Auctioneer shall preserve such documents for a period of three years after the completion

of the completion of the performance pursuant to this Contract, or for such longer period as may be required by law. The Auctioneer shall be entitled to no compensation for the cost of preserving, maintaining and storing such documents.

**1.05**   **Sale Site**– The Auctioneer shall provide, at no cost to the Trustee or the Secured Party, a suitable site for conduct of each auction.

## SECTION 2: SECURED PARTY'S OBLIGATIONS AND RESPONSIBILITIES:

**2.01**   **Refurbishing**

(a)   Should the Auctioneer organize and pay for painting, cleaning, or refurbishing any part of the Equipment, the Auctioneer shall be entitled to be reimbursed for these costs, provided that the Auctioneer first obtain written authorization from the Trustee and the Secured Party to the extent such costs exceed $1,000 per item, and

(b)   The Secured Party shall reimburse the Auctioneer for the cost of fuel and batteries as the Auctioneer reasonably deems necessary for demonstration and sale of the Equipment.

**2.02**   **Delivery** – The Trustee and the Secured Party shall deliver, or have delivered, the Equipment, at Secured Party's cost, to the applicable auction site no later than 15 days prior to the a scheduled auction. Except as expressly set forth herein, the Trustee and the Secured Party make no representation or warranty regarding the condition of the Equipment and the Auctioneer acknowledges that the Equipment is being sold "as is, where is and with all faults."

The Trustee and the Secured Party shall attempt to provide to the Auctioneer, no later than 15 days prior to the applicable auction to which any titled Equipment has been consigned, all original title documents or such further documents in the Secured Party's possession as may be necessary to transfer title to the Equipment, properly endorsed.

Secured Party hereby assigns Power of Attorney to the Auctioneer for the limited purpose of executing on Secured Party's behalf, all documents required to transfer title to, and permit registration or ownership of, any part of the Equipment by the purchaser thereof.

**2.02**   **Searching and Title Documents**

(a)   The Trustee and the Secured Party authorize the Auctioneer to conduct searches or use other means available, as deemed necessary by the Auctioneer for the disclosure of liens and encumbrances, and to contact creditors to determine amounts claimed against the Equipment; and

(b)   The Auctioneer shall be entitled to a document administration fee of $50 per item of Equipment that requires title or registration documents under applicable State law.

**2.03**   **Risk of Loss, Insurance** - The Secured Party's shipper shall be responsible for loss or damage to the Equipment until the delivery of the applicable Equipment to an auction

US Guar R03_09                                                      Initials ____ ____

1880142v2

site. The Auctioneer shall be responsible for loss or damage to any Equipment at and after the time of delivery of such Equipment to the auction site.

2.05 **Indemnity** – The Secured Party shall indemnify and save the Auctioneer harmless from and against all claims, demands, suits, actions, causes of action, damages, costs or charges arising from material inaccuracies in the description or condition of the Equipment set forth in Schedule "A".

2.06 THE AUCTIONEER AND ITS AGENTS, EMPLOYEES, CONTRACTORS, LICENSEES AND INVITEES SHALL INDEMNIFY AND HOLD THE SECURED PARTY, THE TRUSTEE, AND THE VARIOUS ESTATES JOINTLY ADMINISTERED BY THE TRUSTEE UNDER CASE NO. 09-34992-H1-7, HARMLESS FROM AND AGAINST ALL CLAIMS, DEMANDS, SUITS, ACTIONS, CAUSES OF ACTION, DAMAGES, COSTS OR CHARGES ARISING FROM DAMAGE TO ANY PROPERTY OR INJURY TO, OR DEATH OF, ANY PERSON IN, UPON, OR ABOUT THE LOCATION WHERE ANY AUCTION IS HELD, ARISING AT ANY TIME AND FROM ANY CAUSE OTHER THAN SOLELY BY REASON OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE SECURED PARTY. The Auctioneer, for itself and its agents, employees, representatives, contractors, successors, assigns, invitees and licensees, expressly assumes all risks of injury or damage to person or property, whether proximate or remote, in connection with each auction. The provisions of this paragraph shall survive the expiration or termination of this Contract. The Auctioneer shall provide a copy of its general liability policy to the Trustee and the Secured Party within 5 days after approval of this Contract by the Court.

2.07 **No Buybacks, Unreserved Auction Sale** – The Secured Party shall not bid, directly or indirectly, nor allow any other person to bid on Secured Party's behalf or for the Secured Party's benefit, by agency or otherwise, on the Equipment or any part thereof at the auction;

Secured Party acknowledges the auction is unreserved and the Auctioneer shall have no obligation or duty to withdraw the Equipment or any part thereof from the auction sale or to cancel the auction. The Equipment shall be sold to the highest bidder on the date of the auction.

## SECTION 3: MUTUAL AGREEMENTS

**It is mutually agreed and understood between the parties hereto that:**

3.01 **No Guarantee** – The Trustee and Secured Party acknowledge that there is no guarantee whatsoever as to the gross proceeds to be realized from the sale of the Equipment at auction.

3.02 **Use of Equipment** – The Trustee and the Secured Party authorize the Auctioneer to utilize the Equipment in setting up the auction.

**3.03**   **Collection of Proceeds** – The Auctioneer shall collect the full proceeds from the sale of the Equipment and remit all such proceeds to the Trustee except for:

    (a)   all amounts payable to the Auctioneer hereunder, including commission, as calculated pursuant to sections 1.03 above; and

    (b)   amounts as otherwise authorized by Court Order.

**3.04**   **Uncollected Proceeds** – The Auctioneer may, as it deems necessary, re-auction and continue to hold any part of the Equipment not sold or paid for at an auction.

**3.05**   **Other Consignments** – Equipment belonging to other owners may be sold at each auction.  The Auctioneer shall bear all costs, liabilities and obligations arising from or relating to any such equipment and agrees to indemnify and hold harmless the Secured Party from and against any and all claims arising from or relating to such equipment.

**3.06**   **Entire Agreement** – this Contract:

    (a)   constitutes the entire agreement between the parties and supersedes and takes the place of all prior contracts, understandings, representations or warranties;

    (b)   may not be amended except in writing and with approval of the U.S. Bankruptcy Court.  There are no understandings, agreements, promises, terms, conditions, or warranties expressed or implied, whether orally or by law, statute or trade usage, other than as specifically stated herein; and

    (c)   shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns.

**3.07**   **Internet Bidding** – The Auctioneer may in its sole discretion, offer certain lots for sale, in conjunction with its public unreserved auction, to Internet bidders, using its trademarked "rbauctionBid-Live" service.  The Auctioneer shall use its best effort to ensure that for any sale at which "rbauctionBid-Live" is advertised it is available, however at any given sale

    (a)   only those lots which the Auctioneer deems appropriate for "rbauctionBid-Live" shall be offered on the Internet , and

    (b)   certain circumstances concerning the Internet and the technology in use are beyond the Auctioneer's control, and "rbauctionBid-Live" may not be available at any given time or auction.

**3.08**   **Force Majeure** – Neither party shall be liable to another party for delay or failure to perform such party's obligations under this Contract due to fires, strikes, floods, adverse weather, acts of God or lawful acts of public authorities ("Force Majeure"); provided, that such delay or failure to perform shall only be excused during the pendency of a Force Majeure.

**3.09**   **Jurisdiction** – this Contract is subject to, and any dispute arising hereof will be determined by the U.S. Bankruptcy Court.

3.10 **Notice** – any notice given hereunder shall be either delivered, sent by facsimile or electronic mail, or by prepaid registered mail to the parties hereto at the notice information set out on page 1.

3.11 **Headings** – all headings in this Contract are for reference purposes only and this Contract shall be interpreted without reference to such headings.

3.12 **Signatures** – receipt by the Auctioneer via facsimile or via electronic mail in portable document format (.pdf) of a signed copy of this Contract shall, upon acceptance by the Auctioneer, be effective and binding on all parties; and

3.13 **Privacy** – Information provided in this Contract will be retained by the Auctioneer in accordance with its formal Privacy Statement, provided on the Auctioneer's website at www.rbauction.com.

3.14 **Bankruptcy Court Approval; Effectiveness of Contract** – The parties acknowledge and agree that the effectiveness of this Contract and the agreements set forth herein are subject to approval of the U.S. Bankruptcy Court, and the issuance of an Order by such Court confirming the sale of the Equipment, and the vesting of title in the purchasers thereof, free and clear of all liens and encumbrances as contemplated under section 363 of the U.S. Bankruptcy Code.

3.15 **Compliance with Law** – The Auctioneer agrees to conduct each auction in compliance with all applicable law, including the applicable provisions of the applicable State Uniform Commercial Code. The Auctioneer shall prominently state both in its advertising for each auction and at each auction that all Equipment is being sold "as is, where is and with all faults" and with any additional disclaimers of warranty, including disclaimers of the warranties of merchantability and fitness for a particular purpose and the Auctioneer shall not make, orally or in writing, any representation or warranty with respect to the Equipment or the quality thereof inconsistent with the requirements of this sentence.

IN WITNESS WHEREOF this Contract has been executed by the parties hereto as of date first above written.

**ROBBYE R. WALDRON, CHAPTER 7 TRUSTEE.**

Per: _____

Robbye R. Waldron, Chapter 7 Trustee

Cust. #:

**BANK OF AMERICA, N.A.**

Cust. #:

US Guar R03_09

Init

1880142v2

Per:  _____
      Donald A. Mastro, Senior Vice President

**RITCHIE BROS. AUCTIONEERS (AMERICA) INC.**

Per:  _____
      Rob Whitsit
      Senior Vice President

Attached to and forming part of
CONTRACT TO AUCTION

LIENHOLDER INFORMATION

SECURED PARTY NAME: _____
SALE SITE: _____ SALE DATE: _____

| Sch A # | Lienholder | Contact Person | Phone # & Fax # | Amount |
|---------|-----------|----------------|-----------------|--------|
|         |           |                |                 |        |
|         |           |                |                 |        |
|         |           |                |                 |        |
|         |           |                |                 |        |
|         |           |                |                 |        |
|         |           |                |                 |        |
|         |           |                |                 |        |

**To Whom It May Concern:**

The undersigned party hereby authorizes Ritchie Bros. Auctioneers (America) Inc. (the "Auctioneer") to conduct searches and contact creditors as required for the disclosure of liens, charges and encumbrances and to determine amounts claimed against the equipment (the "Equipment") described on the attached Schedule "A". The undersigned further consents to the release to the Auctioneer of any and all information pertaining to any such lien, charge or other encumbrance or security interest claimed in any assets of the undersigned.

Dated this _____ day of _____, 20_____

_____
Name of Secured Party

_____
Signature

_____
Name of Signatory (if different from Secured Party)

_____
Position                                    SECURED PARTY CODE: _____

US Guar R03_09                              Initials _____ _____

1880142v2

# EXHIBIT "A"

**Ritchie Bros. Auctioneers (America) Inc.**
4000 Pine Lake Road, Lincoln, NE 68516
Phone (402) 421-3631   Fax (402) 421-3650

RE:  CONTRACT TO AUCTION BETWEEN RITCHIE BROS. AUCTIONEERS (AMERICA) INC.,
ROBBYE R. WALDON, TRUSTEE AND *BANC OF AMERICA, NA*, DATED April __, 2010 and
renewals thereto.

Pursuant to the "Terms and Conditions" of the above contract, we hereby consign to your auction
to be held on _____ at _____ , the
equipment listed below.  Delivery of the equipment shall occur FIFTEEN  (15) days prior to the
auction.  You are authorized to spend an amount of
_____

Dollars ($_____ ) for make ready and sale preparation of the equipment.  We agree that if we
require advertising of any specific pieces in a particular auction brochure, we will give a minimum of
THIRTY (30) days notice of equipment to be sold.

## *EQUIPMENT LIST*

| Year | Make | Model | S/N | Description | Owner ID No |
|------|------|-------|-----|-------------|-------------|

**SEE ATTACHED SCHEDULE A**

   (Copies of front & back of Titles for all titled vehicles are attached)

**REMIT TO:**

Bankruptcy Estate of Nighthawk
Oilfield Services Robbye R. Waldron Trustee
Acct# 8020934992
Bank: Sterling Bank
ABA #: 113005549

OWNER CODE: **G80**

(BOA/Nighthawk Oilfield Services)

Per _____

RBA SALESMAN:  Wade Whitenberg

_____
Print Name

US Guar R03_09

Initials _____  _____

1880142v2