



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**03/23/2012**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NIGHTHAWK OILFIELD SERVICES | § | BANKRUPTCY NO. 09-34992 |
| LTD., et al., | § | (Jointly Administered) |
| | § | Chapter 7 |
| Debtors. | § | |
| | § | |
| | § | |
| THE GUARDIAN LIFE INSURANCE | § | |
| COMPANY OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-0079 |
| | § | |
| BANK OF AMERICA, N.A., MARK | § | |
| H. FISHER, and TONY EARLE, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This is an ERISA action concerning premiums allegedly collected from employees, held in the employer's general bank account, and seized by the bank in satisfaction of a loan. Pending before the court are cross-motions for summary judgment submitted by the Guardian Life Insurance Company of America ("Guardian") under Docket Entry No. 40[1] and Bank of America, N.A. ("BANA") under

---

[1] The Guardian Life Insurance Company of America's Motion for Summary Judgment and Supporting Brief ("Guardian's MSJ"), Docket Entry No. 40.

Docket Entry No. 39.[2]  Both parties have also submitted responses.[3] For the reasons explained below, the court will deny Guardian's MSJ and grant BANA's MSJ.

### I.  Factual and Procedural Background

Guardian alleges the following facts: Guardian provided insurance to employees of Richey Oilfield Construction, LLC ("Richey Oilfield") in 2008 and 2009 under the ERISA-governed Guardian Group Plan No. 437130 ("Plan").[4]  Guardian was an ERISA fiduciary of the Plan.[5]  In June of 2009 Richey Oilfield withheld $72,787.54 from the wages of Richey Oilfield employees in order to satisfy the premium for the Plan and deposited this amount in its account at BANA.[6]  Richey Oilfield did not pay the June 2009 premium due to the Plan because its check to Guardian was returned for insufficient funds.[7]  BANA had a security interest in Richey

---

[2] Defendant Bank of America, N.A.'s Motion for Summary Judgment and Supporting Affidavit and Brief ("BANA's MSJ"), Docket Entry No. 39.

[3] Plaintiff The Guardian Life Insurance Company of America's Response to Defendant Bank of America, N.A.'s Motion for Summary Judgment ("Guardian's Response"), Docket Entry No. 41; Defendant Bank of America, N.A.'s Response to Plaintiff's Motion for Summary Judgment ("BANA's Response"), Docket Entry No. 42.

[4] First Amended Complaint of the Guardian Life Insurance Company of America ("First Amended Complaint"), Docket Entry No. 34, ¶¶ 7, 9.

[5] Id. ¶ 11.

[6] Id. ¶¶ 14-15; Guardian's Response, Docket Entry No. 41, p. 2.

[7] First Amended Complaint, Docket Entry No. 34, ¶¶ 16-17.

Oilfield's bank account at BANA and in connection with this security interest BANA regularly "swept" that bank account, including "all funds of Richey Oilfield Construction during the pay periods in June 2009 prior to the filing of the above-captioned bankruptcy proceedings."[8]

BANA's view of the case is typified in the following excerpt from its Response:

> Lacking any solvent defendant against whom it can prosecute its claim for breach of an insurance contract, Guardian seeks to hold BANA liable merely because BANA automatically swept funds in [Richey Oilfield's] bank account.  BANA's bare possession of these funds (which it obtained in accordance with its loan agreements with [Richey Oilfield]) is insufficient to hold BANA liable as a fiduciary of [the Plan].[9]

Guardian's view of the case can be gleaned from an excerpt from its own Response:

> At its core, this is a simple case about BOA's failure to pay to Guardian funds withheld from the wages of the employees of [Richey Oilfield] in June 2009 to pay for medical, dental, and other insurance provided by Guardian under an ERISA employee welfare benefit plan sponsored by [Richey Oilfield].  BOA came into possession of the employee funds, which were ERISA trust funds immediately at the moment the funds were withheld from the employee paychecks and notwithstanding the fact that they were placed in [Richey Oilfield's] bank account, when BOA "swept" [Richey Oilfield's] account to satisfy [Richey Oilfield's] secured corporate indebtedness to BOA.[10]

---

[8] Id. ¶¶ 21-22.

[9] BANA's Response, Docket Entry No. 42, p. 1.

[10] Guardian's Response, Docket Entry No. 41, pp. 1-2.

## II. Guardian's Causes of Action and Remedies Sought

In its First Amended Complaint, Guardian alleges two counts against BANA.[11] In Count 1, titled "DECLARATORY RELIEF AS TO ALL DEFENDANTS," Guardian asks the court for a declaration that

> BOA, Fisher and Earle violated ERISA by breaching their fiduciary duties in relation to assets of the Guardian Plan under 29 U.S.C. §§ 1104(a)(1) and 1132(a).[12]

Guardian also seeks the following remedy:

> Guardian seeks a declaration that BOA, Fisher and Earle have liability under ERISA in this case which arises not only due to their status as ERISA fiduciaries but also because BOA obtained plan assets by means of a 'prohibited transaction' as defined under ERISA. This is a suit for appropriate equitable relief under the statute to obtain redress. 29 U.S.C. § 1132(a)(3); *Harris Trust & Savings Bank v. Salomon Smith Barney*, 530 U.S. 238, 253 (2000). Under 29 U.S.C. § 1106, Defendants, both as 'fiduciaries' and 'parties in interest,' are subject to liability for engaging in prohibited transactions respecting the Guardian Plan.[13]

Guardian asks for a declaration that BANA breached its fiduciary duty, rendering it "personally liable to make good any losses to the Guardian Plan resulting from such breach,"[14] and a declaration that BANA is liable under ERISA for engaging in a transaction that violates 29 U.S.C. § 1106(a)(1).[15] Finally, Guardian identifies the relief it seeks as "judgment for damages and equitable relief

---

[11] First Amended Complaint, Docket Entry No. 34, ¶¶ 28-45.

[12] Id. ¶ 33.

[13] Id. ¶ 34.

[14] Id. ¶ 35.

[15] Id. ¶ 36.

against Defendants on account of their violations of ERISA, in at least the amount of the Contributions, plus prejudgment interest, and attorneys' fees."[16]

In Count II, titled "TURNOVER (DIRECTED TO BANK OF AMERICA)," Guardian states that it "seeks turnover of the Contributions from Bank of America or, alternatively, judgment for the amount of the Contributions, plus prejudgment interest, and attorneys' fees."[17]

In its briefing on the cross-motions for summary judgment Guardian at various points describes its causes of action as follows:

> BOA is liable to Guardian as a matter of law for the $72,787 in employee contributions admittedly swept from Richey's bank account, and is a "party in interest" subject to liability and remedies under ERISA. Guardian is entitled to "appropriate equitable relief" under 29 U.S.C. § 1132(a), including restitution or imposition of a constructive trust over the employee trust funds.[18]
>
> Since BOA is both a fiduciary and a "party in interest" who received a transfer of assets of the Guardian Plan, it has liability under 29 U.S.C. §§ 1109(a) and 1132(a)(3) to return or "make good" the sum of $72,787 to Guardian, which amount represents the June 2009 premium paid by Richey's employees to the Guardian Plan through paycheck deductions or withholdings.[19]

The court concludes that Guardian is asserting two claims against BANA:  breach of fiduciary duty under 29 U.S.C. § 1109(a) and

---

[16] Id. ¶ 37.

[17] Id. ¶ 45.

[18] Guardian's Response, Docket Entry No. 41, pp. 3-4.

[19] Id. at 14; accord Guardian's MSJ, Docket Entry No. 40, p. 14.

engaging in a prohibited transaction under 29 U.S.C. § 1106. The court further concludes that Guardian seeks monetary damages or equitable relief under 29 U.S.C. § 1132(a)(3), including restitution or a constructive trust.

### III. Summary Judgment Standard

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000).

## IV. ERISA Fiduciary

**A.   Applicable Law**

A person or entity becomes an ERISA fiduciary either by being named as a fiduciary in the written instruments that govern the plan or by exercising discretionary authority or control over the management, administration, or assets of a plan. Mertens v. Hewitt Associates, 113 S.Ct. 2063, 2066 (1993) (citing 29 U.S.C. § 1002(21)(A) and § 1102(a)). Persons who are not named as fiduciaries in plan documents but who exercise authority and control are nonetheless fiduciaries with respect to the plan:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets.

29 U.S.C. § 1002(21)(A). "[F]iduciary status is to be determined by looking at the *actual* authority or power demonstrated, as well as the formal title and duties of the party at issue." Landry v. Air Line Pilots Ass'n Int'l AFL-CIO, 901 F.2d 404, 418 (5th Cir. 1990). "The term 'fiduciary' is liberally construed in keeping with the remedial purpose of ERISA." Bannistor v. Ullman, 287 F.3d 394, 401 (5th Cir. 2002). The term "plan assets" has been understood by the Fifth Circuit to include "employee contributions to benefit plans which are withheld from employees' paychecks and for deposit into their benefit plans, even though the contributions have not actually been delivered to the benefit plan." Id. at 402

(quoting United States v. Grizzle, 933 F.2d 943, 946 (11th Cir. 1991)).  The issue of fiduciary status is a mixed question of law and fact.  Reich v. Lancaster, 55 F.3d 1034, 1044 (5th Cir. 1995).

**B.   Arguments and Analysis**

BANA argues that it is not a fiduciary of the Plan under ERISA because (1) BANA did not exercise control or authority over Plan assets, (2) there is no Fifth Circuit authority supporting the extension of fiduciary status to a bank that seizes plan assets, and (3) courts in other circuits "have consistently found that a bank that seizes plan assets *does not* become an ERISA fiduciary."[20]  Guardian argues that BANA exercised control sufficient to constitute it as an ERISA fiduciary by sweeping the funds from Richey Oilfield's bank account.[21]

While the Bannistor case involved a very similar set of facts, in Bannistor the Fifth Circuit expressly refused to decide whether the bank was a fiduciary under ERISA:  "[W]e express no opinion on whether a lender like Gibraltar who refuses to fund ERISA plans when in possession of Debtor's assets is subject to fiduciary duties."  Bannistor, 287 F.3d at 405 n.3.  The Fifth Circuit did not need to address the bank's fiduciary status because the bank had already settled with the plaintiffs, and their status was not

---

[20] BANA's MSJ, Docket Entry No. 39, pp. 5-6; BANA's Response, Docket Entry No. 42, pp. 3-7.

[21] Guardian's MSJ, Docket Entry No. 40, p. 13.

before the court on appeal. Id. Therefore, on the central question before this court, the Fifth Circuit's opinion is wholly silent.[22]

The court is aware of only two decisions from courts in the Fifth Circuit that touch on the question of whether a bank is an ERISA fiduciary on facts such as these. First, a 2003 memorandum and order of this court states the general rule that banks in such situations are not fiduciaries. Tittle v. Enron Corp., 284 F.Supp.2d 511, 570 (S.D. Tex. 2003).

> Even where a person exercises some control over the plan's operations or assets, if he is providing only traditional professional services to the plan, he is not a "fiduciary" for such services and is not subject to an ERISA suit for breach of fiduciary duties. An attorney rendering legal and consulting advice to a plan will not be considered to be a fiduciary unless he exercises authority over the plan in a manner other than by usual professional functions. . . . The same is true for providers of other professional services, including accountants and banks.

Id. (internal citations, quotation marks, and alteration marks omitted). Second, a 1988 Fifth Circuit opinion held that Alliance Federal Savings and Loan Association was not a fiduciary where it had issued certificates of deposit to the administrator of an ERISA plan in exchange for plan assets. Wood v. CNA Ins. Companies, 837 F.2d 1402 (1988).

---

[22]The court declines to read any "hints" into the Bannistor opinion, as suggested by Guardian. Guardian's MSJ, Docket Entry No. 40, p. 13 ("And the Fifth Circuit in *Bannistor* dropped an unmistakable hint that if it had to decide [the bank's] fiduciary status it might have found both the corporate officers 'and [the bank] may be fiduciaries.'") (quoting Bannistor, 287 F.3d at 404).

> A savings and loan association would qualify as a fiduciary only if the association were the asset custodian or trustee; took part in investment decisions; was affiliated with the plan sponsor; or exercised discretionary authority regarding management of the plan or disposition of its assets. Alliance Federal, acting solely as a financial institution which had issued certificates of deposit, had none of these characteristics. It was not a fiduciary of the plans.

Id. at 1403-04.

Courts in other circuits agree that the receipt of deposits and holding of funds consisting of plan assets do not transform the bank into an ERISA fiduciary. E.g., Nagy v. DeWese, 771 F.Supp.2d 502, 513 (E.D. Pa. 2011) ("[M]ere custody or possession of plan assets, such as when a bank 'does no more than receive deposits from a benefit fund on which the fund can draw checks,' does not constitute an exercise of 'authority or control' or confer fiduciary status.") (quoting In re Mushroom Transp. Co., 382 F.3d 325, 346-47 (3d Cir. 2004)); Reichling v. Continental Bank, 813 F.Supp. 197, 198 (E.D.N.Y. 1993) ("Every court that has examined the question of whether a bank can be an ERISA fiduciary based on the bank's activities as a mere depository or lender to a trust fund has determined that the bank's lack of discretion in these activities precludes it from being deemed a fiduciary.") (discussing as an example O'Toole v. Arlington Trust Co., 681 F.2d 94 (1st Cir. 1982)).

Courts in other circuits have held that banks were not fiduciaries even when acting as lenders that seize account funds. A district court in 2010 held that a bank was not a fiduciary where

the bank, as a secured creditor, seized funds that were commingled with plan assets from the general operating account of a debtor. <u>Anthony v. JetDirect Aviation, Inc.</u>, 725 F.Supp.2d 249 (D. Mass. 2010). The Eleventh Circuit rejected a plaintiff's claim that Sun Bank became a fiduciary "when it exercised its powers under the insecurity provisions of [the particular loan in question]." <u>Useden v. Acker</u>, 947 F.2d 1563, 1574-75 (11th Cir. 1991). The court there noted that "[r]elevant cases have even rejected ERISA fiduciary status when the lender acted improperly or outside its legal rights." <u>Id.</u> at 1576.

There is, therefore, strong legal authority for the proposition that a bank does not assume fiduciary status by either holding plan assets in an account or by exercising its rights as a lender and seizing an account that is used as collateral and that includes plan assets. BANA is therefore not an ERISA fiduciary: Neither its possession of Richey Oilfield's account nor its sweeping of that account make it a fiduciary under ERISA. The court will therefore grant BANA's MSJ on the issue of fiduciary status.

### V. **Prohibited Transaction**

Guardian alleges that BANA engaged in a prohibited transaction and that the court should therefore impose a constructive trust or order BANA to make restitution.

**A. Applicable Law**

29 U.S.C. § 1106 prohibits certain transactions, including the following:

-11-

> (a) Transactions between plan and party in interest
>
> Except as provided in section 1108 of this title:
>
>> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
>>
>>> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>>>
>>> . . .
>>>
>>> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan.

29 U.S.C. § 1106(a)(1). The term "party in interest" is defined to include "a person providing services to such plan." 29 U.S.C. § 1002(14)(B). 29 U.S.C. § 1108 and various regulations provide several safe harbors from liability under 29 U.S.C. § 1106. Neither Guardian nor BANA argues for the applicability of any of these exemptions from liability.

In <u>Harris Trust & Savings Bank v. Salomon Smith Barney Inc.</u>, 120 S. Ct. 2180 (2000), the Supreme Court examined the scope of liability for engaging in a prohibited transaction under ERISA. A unanimous Court held that ERISA's general equitable remedy provision, 29 U.S.C. § 1132(a)(3), can extend liability to a nonfiduciary party-in-interest.

> [29 U.S.C. § 1132(a)(3)] admits of no limit (aside from the "appropriate equitable relief" caveat . . .) on the universe of possible defendants. Indeed [29 U.S.C. § 1132(a)(3)] makes no mention at all of which parties may be proper defendants-the focus, instead, is on

>redressing the "*act or practice* which violates any provision of [ERISA Title I]."

Id. at 2187 (emphasis in original). Relying on the common law of trusts, the Court further held there are "limits on restitution actions" against defendants who are not the "original wrongdoer," including some transferees. Id. at 2189-90.

>Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust. Translated to the instant context, the transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful.

Id. at 2190. The Court left for remand the question of who would bear the burden of proving whether the transferee was a purchaser for value and had notice. Id. at 2190 n.3.

The Fifth Circuit in Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough, 354 F.3d 348 (5th Cir. 2003), applied Harris Trust to a non-fiduciary defendant that was not a party in interest. The court first summarized Harris Trust as follows:

>[T]he Supreme Court has ruled that [§ 1132(a)(3)] liability is not dependent on an entity's status as a plan fiduciary. In [Harris Trust], the Court squarely held that [§ 1132(a)(3)] authorizes suit against a non-fiduciary "party in interest" to a transaction prohibited under [§ 1106(a)].

Id. at 352 (internal citation omitted). The court then held that

>even though, in the instant litigation, the law firm is not a "party in interest," as that term is defined by

-13-

> ERISA, the Supreme Court's reasoning in *Harris Trust* influences us to conclude today that [§ 1132(a)(3)] authorizes a cause of action against a non-fiduciary, non-"party in interest" attorney-at-law when he holds disputed settlement funds *on behalf of* a plan-participant client who is a traditional ERISA party.

Id. at 353.

### B. Arguments and Analysis

Guardian argues that BANA "obtained plan assets by means of a 'prohibited transaction'" and that BANA is therefore liable under this "suit for appropriate equitable relief under the statute to obtain redress."[23] Guardian emphasizes that nonfiduciaries can be held liable for transactions prohibited under 29 U.S.C. § 1106(a)(1)(A) ("sale or exchange . . . of any property between the plan and a party in interest"), under 29 U.S.C. § 1106(a)(1)(B) ("transfer to . . . a party in interest, of any assets of the plan"), and under 29 U.S.C. § 1132(a)(3) (ERISA's general enforcement provision for equitable relief). The crux of Guardian's argument is that "[s]ince BOA is both a fiduciary and a 'party in interest' who received a transfer of assets of the Guardian Plan, it has liability under 29 U.S.C. §§ 1109(a) and 1132(a)(3) to return or 'make good' the sum of $72,787, constituting the June 2009 premium which was withheld by Richey's employees through payroll deductions or withholdings."[24]

---

[23]Guardian's MSJ, Docket Entry No. 40, p. 13.

[24]Id. at 14.

-14-

BANA responds that it has not engaged in any transactions with the Plan, and that "the only transaction in question (the sweeping of the Richey Bank Account) was a transaction between BANA and its customer, Richey."[25]  BANA also denies that it is a fiduciary and states without further argument that "BANA does not meet any of the statutory requirements to be deemed a party-in-interest under 29 U.S.C. § 1002(14)."[26]

The court will not base its determination on an evaluation of BANA's argument that it is not liable for any alleged prohibited transaction because it is neither a fiduciary nor a party-in-interest.  Guardian's prohibited transaction claim is brought under both the general equitable relief statute (29 U.S.C. § 1132(a)(3)) and the substantive provision addressing prohibited transactions (29 U.S.C. § 1106).[27]  Because Guardian brings this action under § 1132(a)(3) and § 1106, the Harris Trust and Bombardier precedents apply.  The court's determination that BANA was not an ERISA fiduciary is therefore not determinative of the prohibited transaction claim.  While Bombardier may be distinguishable, in that if BANA established that it was not a party in interest—an issue that BANA has not adequately briefed—it might not be liable, the relevant precedents do not provide the court with a firm basis to evaluate this argument.

---

[25] BANA's MSJ, Docket Entry No. 39, p. 7

[26] Id. at 7-8.

[27] First Amended Complaint, Docket Entry No. 34, ¶¶ 34, 36-37.

The court finds more persuasive BANA's argument that it could not have engaged in a prohibited transaction because it engaged in no transactions with the Plan. The statute, in relevant part, only prohibits transactions that involve the Plan. 29 U.S.C. § 1106(a)(1); see also Tribble v. Edison Int'l, 693 F.Supp.2d 1122, 1125 (C.D. Cal. 2009) ("Even if [party in interest] State Street's sending an invoice to SCE is a 'transaction' (the exchange of money for services), the Plan was not engaged in the transaction in question—the Plan was not a party to the contract between State Street and SCE. Thus, Plaintiff cannot prove that SCE caused the Plan to engage in the transaction in question.").

The only two events at issue in this action are (1) Richey Oilfield's deposit of what Guardian alleges were Plan assets in the bank account at BANA, and (2) BANA's sweeping of that account. The first event is not a transaction with the Plan: Even assuming that the bank, by the deposit, thereby became the transferee of Plan assets, the transferor of those assets would be Richey Oilfield, not the Plan. The second event is also a transaction with Richey Oilfield and not the Plan. Even if the funds that Richey Oilfield deposited in its account were or included Plan assets, and even if the funds that BANA swept from Richey Oilfield's account were or included Plan assets, BANA's only involvement was with Richey Oilfield and not the Plan.

The court will therefore grant BANA's MSJ and will deny Guardian's MSJ on the issue of prohibited transaction and equitable relief, including Guardian's request for a constructive trust.

## VI. Conclusion

For the reasons stated above, The Guardian Life Insurance Company of America's Motion for Summary Judgment and Supporting Brief (Docket Entry No. 40) is **DENIED**, and Defendant Bank of America, N.A.'s Motion for Summary Judgment and Supporting Affidavit and Brief (Docket Entry No. 39) is **GRANTED**. The court will conduct a scheduling conference in Court Room 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002, on April 13, 2012, at 4:00 p.m.

**SIGNED** at Houston, Texas, on this 23rd day of March, 2012.

SIM LAKE
UNITED STATES DISTRICT JUDGE